Thelma ERBECK, Rose Leeman, Janice Kennedy, Dale Hupp, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. C–1–80–327, C–1–80–330, C–1–80–466 and C–1–80–572.

United States District Court, S. D. Ohio, W. D.

March 4, 1982.

Thomas R. Bopeley, Zanesville, Ohio, for plaintiffs in all cases.

Kenneth M. Mortimer, Zanesville, Ohio, for plaintiffs in No. C–1–80–330.

Jeffrey A. Rich, Columbus, Ohio, for plaintiffs in No. C–1–80–466.

Joseph E. Kane, Asst. U. S. Atty., Columbus, Ohio, for defendant in all cases.

Elizabeth Gere Whitaker, Asst. U. S. Atty., Cincinnati, Ohio, for defendant in Nos. C–1–80–327, C–1–80–330 and C–1–80–572.

Donetta D. Wiethe, Asst. U. S. Atty., Cincinnati, Ohio, for defendant in Nos. C–1–80–466 and C–1–80–572.

## ORDER AND OPINION DENYING PLAINTIFFS' MOTIONS FOR COLLATERAL ESTOPPEL

SPIEGEL, District Judge:

This matter is before the Court on four identical motions filed by plaintiffs and defendant's responses. Plaintiffs move this Court to issue an Order collaterally estopping the defendant, United States of America, from denying that plaintiffs were inadequately warned regarding the risks and benefits, and rights and remedies arising out of the administration of the swine flu vaccine to plaintiffs. Plaintiffs rely upon *Petty v. United States*, No. C–78–04083, (N.D.Iowa 1981) another swine flu case in which the Court held that defendant United States had failed to provide an adequate informed consent form as required by 42 U.S.C. § 247b(j)(1)(F). For the reasons set forth below, plaintiffs' motions are hereby denied.

Plaintiffs in all of these cases have alleged injuries resulting from the swine flu vaccination. The government, in cases in which a plaintiff contracted Guillan-Barre-Syndrome (GBS) and is able to show causation between the disease and the receipt of the swine flu vaccination has stipulated liability. None of these plaintiffs contracted GBS, but all claim that the swine flu shot resulted in some other disease or injury. Plaintiffs, therefore, have the burden of establishing some theory of liability.

When the swine flu program was first initiated the Government developed a standard registration form designed to fulfill its statutory duty to inform and gain the consent of all participants in the inoculation program. 42 U.S.C. § 247b(j)(1)(F). Each form provided general information about swine flu and some of the possible side-affects of the shot. The form listed certain categories of persons who should not receive the shot except under medical supervision. Each person who received a shot signed one of these forms under a clause stating that the signor had read the form and understood the benefits and risks of the vaccine.

Identical forms were signed by the plaintiffs in *Petty* and by plaintiffs in the cases before this Court. No other medical information or warnings were provided with respect to the possible dangers of the vaccine. Plaintiffs argue that the Government should now be collaterally estopped, based on the decision in *Petty*, from denying that the plaintiffs were inadequately warned with regard to the risks and benefits, and rights and remedies arising from the administration of the swine flu vaccine.

Like res judicata, the doctrine of collateral estoppel precludes, in the interests of judicial economy, relitigation of issues that have been conclusively decided in prior actions. Traditionally collateral estoppel is used defensively, whereby a defendant seeks to preclude a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n.4, 99 S.Ct. 645, 649 n.4, 58 L.Ed.2d 552 (1979). In *Parklane* the Supreme Court expanded the use of collateral estoppel so that it may be used offensively; where a defendant has litigated an issue and lost in one action, a different plaintiff in a subsequent action may seek to foreclose the defendant from relitigating the issue in the subsequent litigation. This doctrine does not prevent a subsequent plaintiff from relitigating an issue decided in favor of the same defendant in a prior action. The Supreme Court in *Parklane* made clear that the trial court judge has broad discretion to determine whether offensive collateral estoppel should be applied. *Id.* at 331, 99 S.Ct. at 651. Specifically, the Court set out several factors which would militate against its application:

> [O]ffensive use of collateral estoppel does not promote judicial economy in the same manner defensive does ... Since a plaintiff will be able to rely on a previous judgment against a defendant, but will not be bound by that judgment if the defendant wins he has every incentive to adopt a "wait and see" attitude ... A second argument is that it may be unfair to the defendant.

*Id.* at 329–30, 99 S.Ct. at 650–51.

The Court found the use of offensive collateral estoppel particularly inappropriate and unfair to defendant when a court is faced with numerous plaintiffs suing a single defendant and "the judgment relied upon as a basis for estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Id.* at 330, 99 S.Ct. at 651. "The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive collateral estoppel would be unfair to defendant, a trial judge should not allow the use of offensive collateral estoppel." *Id.* at 331, 99 S.Ct. at 651. The Sixth Circuit has also recognized these constraints on the use of offensive collateral estoppel. *Patrick v. South Central Bell Telephone Co.,* 641 F.2d 1192 (6th Cir. 1980). Given these constraints, we must determine the propriety of applying offensive collateral estoppel to the issue of the adequacy of the warning given to the plaintiffs by the government when plaintiffs received the swine flu vaccination in 1976.

Plaintiffs urge that the Court's decision in *Petty v. U.S.,* No. C–78–04083 (N.D. Iowa 1981) should be conclusive in this action to the extent that *Petty* found defendant to have failed to provide plaintiffs with adequate warning. Like the cases before this Court today, *Petty* was also a non-GBS case in which plaintiff was required to prove a theory of liability. In finding for plaintiffs on the issue of informed consent the Court in *Petty* stated:

> [T]he Court finds that there was no satisfactory "informed consent form" setting out "rights and remedies" as required by the legislation, and further finds that even if the "registration form is considered by this Court as adequate to inform as to the "rights and remedies" of a participant, it is inadequate in setting out the "risks and benefits" also required by the legislation ... defendant failed to meet the statutory standard of 42 U.S.C. § 247b(j)(1)(F) and therefore, was negligent in failing to adequately warn plaintiffs of the dangers involved in the swine flu vaccination.

*Id.* at 19.

In connection with the swine flu vaccination program 42 U.S.C. § 247b(j)(1)(F) provides that the government undertake:

> The development, ... and implementation of a written informed consent form and procedures for assuming that the risks and benefits from the swine flu

vaccine are fully explained to each individual to whom such vaccine is to be administered ... Such procedures shall include the information necessary to advise individuals with respect to their rights and remedies arising out of the administration of such vaccine.

The Court in *Petty* itself notes that its conclusion on the issue of informed consent is not one concurred in by other courts. *Petty, supra,* at 12. It notes other federal courts which have concluded that the warnings on the "Registration Form" were sufficient so that plaintiffs could give their informed consent. In *Bean v. United States,* 533 F.Supp. 567 (D.Colo.1980) the Court found:

> The warning given to Mrs. Bean was sufficient to provide her with adequate information to make an informed decision as to whether she should be vaccinated.

*Id.* at 676.

*Accord, Gundy v. United States,* No. 79–F–587 (D.Colo. Sept. 9, 1980); *Elsworth v. United States,* No. 78–2553 (D.N.J. March 4, 1981) (Defendant's motion for summary judgment is granted.)

■ The inconsistency of opinions where multiple parties are suing one defendant in similar (albeit not identical) fact situations is the exact instance where it would be unfair for the trial court to allow the use of offensive collateral estoppel against defendant. *Parklane, supra,* 439 U.S. at 330–31 n. 14, 99 S.Ct. at 651 n. 14. A decision by one court, therefore, should not bind this Court's determination of the issue, particularly when, as in this case the decision plaintiffs rely upon is against the weight of authority.

■ Plaintiffs contend that *Petty* is distinguishable from the other case decisions on the issue of informed consent on the ground that *Petty* is the only case that determined the informed consent issue based on the federal standard, 42 U.S.C. § 247b(j)(1)(F), while all other courts have relied on state law; therefore, there are no opinions inconsistent with *Petty.* We do not agree. In this case the threshold question is whether there was an informed consent form pursuant to Congressional directive in 42 U.S.C. § 247b(j)(1)(F). The second question is whether that consent form was sufficient; an issue which under the Federal Torts Claims Act is a question of state law. 28 U.S.C. § 1346(b). The Federal Torts Claims Act procedures govern swine flu litigation. 42 U.S.C. § 247b(k)(2)(A).

*Petty* addresses the first question and concludes no such form was present. *Petty supra,* at 19. It never directly addresses the question of whether the form would have been sufficient under Iowa law, although the indication is that it would not. The Court cites the Iowa Consent Statute as evidence of what informed consent requires but does not decide the case based on the Iowa statute. *Id.*

The courts in *Bean* and *Gundy,* among others determined that the sufficiency of the consent form must be judged under applicable state law. *Bean supra,* at 575; *Gundy supra,* at 15. Both courts also looked to the federal standard enunciated in *Canterbery v. Spence,* 464 F.2d 772 (D.C.Cir. 1972) *cert. denied* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972) and imply that standard was also met. *Id.*

Before a court reaches the second second question, therefore, it must first find, either implicitly or explicitly that a consent form exists. The courts deciding *Bean* and *Gundy,* therefore, determined that the government had met its federal statutory duty to provide a consent form. This is directly contrary to the decision in *Petty.* Thus the question of whether or not the government met the Congressional directive contained in 42 U.S.C. § 247b(j)(1)(F), is anything but settled. Even if this Court were to decide that the federal standard had been met, the issue of informed consent needs to be resolved in these cases by application not of Iowa, or Colorado, or New Jersey law, but, pursuant to 28 U.S.C. § 1346(b), under the law of the jurisdiction where the alleged act or omission took place. Plaintiffs' motions for use of offensive collateral estoppel on the issue of adequacy of warning with re-

**448**

gard to risks and benefits, rights and remedies are accordingly denied.

SO ORDERED.